IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| CATERPILLAR INC. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHARLES WILHELM AND GLORIA )<br>WILHELM, INDIVIDUALLY AND AS )<br>ADMINISTRATORS OF THE ESTATE OF )<br>MATTHEW CHARLES WILHELM, DECEASED, )<br>)<br>Defendants. ) | No. 2:08-CV-02020-MPM-DGP |

## AMENDED COMPLAINT

NOW COMES Caterpillar Inc. ("Caterpillar"), by and through its attorneys, David A. Belofsky, Douglas M. Belofsky and Lance R. Minor of Belofsky & Belofsky, P.C., and for its Complaint against the Defendants, Charles Wilhelm and Gloria Wilhelm, individually and as administrators of the Estate of Matthew Charles Wilhelm, Deceased (sometimes hereinafter referred to as the "Wilhelms"), hereby states as follows:

1.     The Plaintiff, Caterpillar, is the sponsor and Plan Administrator of a self-funded health benefit plan it maintains for its eligible employees and their family members (the "Plan"). As Plan Administrator, Caterpillar has and does exercise authority to control and manage the operation and administration of the Plan.

2.     The Defendants, Charles Wilhelm ("Charles") and Gloria Wilhelm ("Gloria"), are on information and belief citizens of the State of Illinois, are husband and wife, and parents of the decedent, Matthew Charles Wilhelm ("Matthew").

3. The Plan was and is an "employee welfare benefit plan" within the meaning of Section 3(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1002(1).

4. Matthew was on and after September 2, 2006 a "participant" of the Plan within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1002(7). Matthew was at material times eligible to receive and did receive benefits under the terms of the Plan and was a beneficiary of the Plan within the meaning of Section 3(8) of ERISA, 29 U.S.C. §1002(8).

5. Caterpillar brings this action pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), to enjoin one or more acts and/or practices which violate the terms of the Plan, and to obtain appropriate equitable relief, including but not limited to a constructive trust and an injunction, to enforce certain material provisions of ERISA and the Plan and to redress certain violations of ERISA and the terms of the Plan.

6. Caterpillar exercises discretionary authority or control respecting management of the Plan, discretionary authority or control respecting management or disposition of Plan assets, and/or discretionary authority or discretionary responsibility in the administration of the Plan, and it is a fiduciary of the Plan within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A). As a fiduciary of the Plan, Caterpillar is empowered to bring this action pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3).

## JURISDICTION

7. This Court has exclusive jurisdiction over the Plaintiff's claims pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. §1132(e)(1), and 29 U.S.C. §1331 inasmuch as this complaint concerns actions arising under Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), and the federal common law.

## VENUE

8. Venue in this district is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2) and/or 28 U.S.C. §1391.

9. The Wilhelms on information and belief reside in this district, and the Estate of Matthew Charles Wilhelm is administered in this district.

## FACTS

10. On or about September 2, 2006, Matthew was severely injured and sustained damages in an accident when he was struck by an automobile driven by a third party, Jennifer Stark (the "accident") while on a bicycle. Matthew survived the accident but subsequently died of the injuries he sustained in the accident on or about September 8, 2006 following hospitalization and surgery.

11. The injuries and damages sustained in the accident by Matthew were proximately caused by the negligence of a third party tortfeasor, Jennifer Stark.

12. On and after the date of the accident, Matthew was eligible to receive and did receive medical benefits under the Plan for medical expenses incurred in treating the injuries which he sustained in the accident, subject and pursuant to the Plan's terms and conditions.

13. On information and belief, the Wilhelms, as parents and next friends of Matthew Charles Wilhelm, as administrators of the Estate of Matthew Charles Wilhelm, Deceased, and/or individually, filed claims or caused claims for medical benefits to be filed against the Plan for the treatment of the injuries Matthew sustained in the accident.

14. The Plan has provided $72,799.79 in medical benefits for the treatment of the injuries Matthew sustained in the accident.

15. On September 2, 2006, and at all material times thereafter, the Plan contained subrogation and reimbursement provisions. The material portions of the Plan setting forth its subrogation and reimbursement requirements are attached hereto as Exhibit A.

16. Jennifer Stark's insurance was insufficient to cover the damages sustained by Matthew in the accident, and her insurer has offered to pay, and on information and belief is about to pay or has recently paid to the Estate of Matthew Charles Wilhelm, policy limits in the amount of $100,000 in settlement of all of its claims arising out of the accident.

17. The Estate of Matthew Charles Wilhelm has brought a claim for underinsured motorists benefits against the Indiana Insurance Company under a policy issued to Gloria and Charles, and the insurer has offered to pay, and on information and belief is about to pay or has recently paid to the Estate of Matthew Charles Wilhelm, policy limits of $500,000 in settlement of all of its claims arising out of the accident.

18. Caterpillar has requested that Charles and Gloria and the Estate of Matthew Charles Wilhelm reimburse it in the amount of $72,799.79 for the medical benefits Matthew Charles Wilhelm received prior to his death for treatment of the injuries he sustained in the accident, but Charles and Gloria and the Estate of Matthew Charles Wilhelm have failed and refused to comply with the requirements of the Plan's subrogation and reimbursement provisions and have disputed the obligation to repay the medical benefits that Matthew received out of the proceeds of the Estate's recoveries. Rather than honoring the Plan's subrogation and reimbursement provisions, Charles and Gloria have assigned or are attempting to assign a disproportionately large amount of the Estate's recoveries as aforesaid to claims for wrongful death that allegedly accrued in their favor upon the death of Matthew.

19. The Plan's subrogation and reimbursement provision expressly states that "if the injury or condition giving rise to subrogation or reimbursement involves the wrongful death of a Program beneficiary, this section applies to the personal representative of the deceased Program beneficiary."

20. No amount of the $72,799.79 in medical benefits provided by the Plan for the treatment of the injuries Matthew sustained in the accident have to-date been reimbursed.

21. The Plan contains a provision, a copy of which is attached hereto in material part as Exhibit B, that provides that "[t]he Plan Administrator has the sole and complete discretionary authority to determine eligibility and entitlement to plan benefits and to construe the terms of the plans, including the making of factual determinations."

22. The Plan has determined that the Estate of Matthew Charles Wilhelm, Deceased, as the recipient of the recoveries as aforesaid, is required to reimburse the Plan for the benefits it provided in treatment of the injuries Matthew sustained in the accident, and further, that the Plan does not permit Gloria and Wilhelm to re-characterize amounts received by the Estate to be recoveries on claims for wrongful death.

23. The Plan's rights to subrogation and reimbursement are exclusively governed by material provisions of ERISA and the terms of the Plan.

24. The Defendants have willfully disregarded the Plan provision which states that "you will do nothing to prejudice the Program's rights under this provision, either before or after the need for services or benefits under the Program."

25. The Defendants have willfully disregarded the Plan provision which states that "you will not accept any settlement that does not fully compensate or reimburse the Program without written approval."

26. The Plan provides, as a condition to the receipt of benefits, that the participant will "hold in trust for our benefit under these subrogation provisions any proceeds of settlement or judgment."

27. The Defendants now or shortly will hold for the benefit of the Plan proceeds of settlement in an amount no less than $72,799.79.

28. The Plan has disclaimed application of the attorney fund doctrine. It provides in pertinent part that the Plan "will not pay fees, costs or expenses you incur with any claim or lawsuit, without our prior written consent," and no prior written consent has been given by the Plan.

29. Plaintiff is or may be entitled to recover their reasonable attorneys' fees and costs incurred in bringing this action pursuant to Section 502(g)(1) of ERISA (29 U.S.C. §1132(g)(1)). Additionally, pursuant to Plan provision more fully set forth in Exhibit A, the Plan is entitled to recover reasonable attorneys fees by reason of the Defendants failure to cooperate with the Plan and protect its legal and equitable rights to subrogation and reimbursement.

WHEREFORE, Plaintiff respectfully prays for the following relief against Charles Wilhelm and Gloria Wilhelm, individually and as administrators of the Estate of Matthew Charles Wilhelm, Deceased:

A. That a constructive trust be impressed upon no less than $72,799.79 in funds intended to be paid to or received by Defendants from any recovery made as compensation for injuries caused by the acts of a third party;

B. That Defendants, and each of them, be enjoined from interfering with the Plan's rights to reimbursement and/or characterizing amounts received by the Estate as recoveries on

claims for wrongful death for the purpose of unlawfully defeating the Plan's right to reimbursement;

      C.    That this Court interpret the material provisions of the subrogation and reimbursement provisions of the Plan for the purpose of determining the applicability of the fund doctrine to any reimbursement or restitution required to be made to the Plan by Defendants;

      D.    That this Court determine the parties' equitable rights to funds that have been or are intended to be paid to or received by Defendants from any recovery made as compensation for injuries caused by the acts of a third party;

      E.    That judgment be entered against the Wilhelms, individually and as administrators of the Estate of Matthew Charles Wilhelm, Deceased in the amount of no less than $72,799.79, and that liability be both joint and several;

      F.    That Plaintiff be awarded such reasonable attorneys' fees and costs incurred herein as may be authorized by ERISA; and

      G.    For such other and further equitable relief as this Court believes Plaintiff is entitled to receive under the material provisions of ERISA and the federal common law.

      Caterpillar Inc.

      By:   /s/ Lance R. Minor
          One of its attorneys

David A. Belofsky (ARDC No. 6180049)
Douglas M. Belofsky (ARDC No. 6193647)
Lance R. Minor (ARDC No. 6256405)
Belofsky & Belofsky, P.C.
33 North Dearborn Street
Suite 2330
Chicago, Illinois 60602
(312) 759-3737

# EXHIBIT A

# EXHIBIT B

# EXHIBIT A

If you, or any other person or organization that was paid, does not promptly refund the full amount, the plan may reduce the amount of any future benefits that are payable under the applicable plan. The reductions will equal the amount of the required refund. The plan may have other rights in addition to the right to reduce future benefits.

## SUBROGATION

Subrogation is the substitution of one person or entity in the place of another with reference to a lawful claim, demand or right. If you receive a benefit payment from the Program for an Injury caused by a third party, and you later receive any payment for that same condition or Injury from another person, organization or insurance company, the Program has the right to recover any payments made by the Program to you. This process of recovering earlier payments is called subrogation. In case of subrogation, you may be asked to sign and deliver information or documents necessary for the Program to protect its right to recover benefit payments made. You agree to provide the Program all assistance necessary as a condition of participation in the Program, including cooperation and information submitted to or supplied by a workers' compensation, liability insurance carrier, and any medical benefits, no-fault insurance, or school insurance coverage that are paid or payable.

The Program shall be subrogated to and shall succeed to all rights of recovery, under any legal theory of any type, for the reasonable value of services and benefits it provided to you from any or all of the following:

- Third parties, including any person alleged to have caused you to suffer injuries or damages.
- Your employer.
- Any person or entity obligated to provide benefits or payments to you, including benefits or payments for underinsured or uninsured motorist protection, no-fault or traditional auto insurance, medical payment coverage (auto, homeowners or otherwise), workers' compensation coverage, other insurance carriers or third party administrators (these third parties and persons or entities are collectively referred to as "Third Parties").
- This right of subrogation does not apply against insurers of policies of insurance issued to, and in the name of, the Employee or covered Dependent.

You agree as follows:

- To assign to the Program all rights of recovery against Third Parties, to the extent of the reasonable value of services and benefits it provided, plus reasonable costs of collection.
- To cooperate with the Program in a timely manner protecting its legal and equitable rights to subrogation and reimbursement, including, but not limited to:
  - Providing any relevant information requested by the Program.
  - Signing and delivering such documents as the Program or its agents reasonably request to secure the subrogation and reimbursement claim.
  - Responding to requests for information about any accident or injuries.
  - Appearing at dispositions and in court.
  - Obtaining the consent of the Program or its agents before releasing any party from liability or payment of medical expenses.
- That failure to cooperate in this manner shall be deemed a breach of contract, and may result in the termination of health benefits and the institution of legal action against a Covered Person.
- That the Program has the authority and sole discretion to resolve all disputes regarding the interpretation of the language stated herein.
- That the Program's rights will be considered as the first priority claim against Third Parties, to be paid before any other of your claims are paid.
- That you will do nothing to prejudice the Program's rights under this provision, either before or after the need for services or benefits under the Program.
- That the Program may, at its option, take necessary and appropriate action to preserve its rights under these subrogation provisions, including filing suit in your name.
- That regardless of whether or not you have been fully compensated or made whole, the Program may collect from the proceeds of any full or partial recovery that you or your legal representative obtain, whether in the form of a settlement (either before or after any determination of liability) or judgment, the reasonable value of services provided under the Program.
- To hold in trust for our benefit under these subrogation provisions any proceeds of settlement or judgment.
- That the Program shall be entitled to recover reasonable attorney fees from you incurred in collecting proceeds held by you.
- That you will not accept any settlement that does not fully compensate or reimburse the Program without written approval.



- To execute and deliver such documents (including a written confirmation of assignment, and consent to release medical records), and provide such help (including responding to requests for information about any accident or injuries and making court appearances) as **the Program** may reasonably request from you.
- That **the Program** may set off from any future benefits otherwise allowed by **the Program** the value of benefits paid or advanced under this section to the extent not recovered by **the Program**.
- That **the Program's** rights will not be reduced due to the Covered Person's own negligence.
- That **the Program** shall not be obligated in any way to purse this right independently or on behalf of the Covered Person.
- That if the injury or condition giving rise to subrogation or reimbursement involves a minor child, this section applies to the parents or guardian of the minor child.
- That if the injury or condition giving rise to subrogation or reimbursement involves the wrongful death of a **Program** beneficiary, this section applies to the personal representative of the deceased **Program** beneficiary.

**The Program** will not pay fees, costs or expenses you incur with any claim or lawsuit, without our prior written consent.

## REIMBURSEMENT TO THE PLAN

If you or your covered Dependent is injured as a result of the act of a third party and you or your covered Dependent's legal representative files a claim for benefits or disability benefits, that same person must, as a condition of receipt of plan benefits, reimburse **the Program** for money received from the third party, or its insurer, to the extent of the amount paid by **the Program** on the claim. The right of reimbursement provides **the Program** with priority over any funds paid by a third party or insurer, without regard to whether you or your covered Dependent has been made whole. **The Program** will be reimbursed from your future benefits, to the extent necessary.

## PLAN FUNDING

### THE PROGRAM

The Program may be funded through a group policy issued by an Insurance Carrier, by the Company through a self-insured plan that may or may not be funded through and paid out of a trust that is intended to be a tax-exempt organization under Section 501(c)(9) of the Internal Revenue Code, or through a combination of these means. **The Program** requires you to contribute to the cost of coverage.

The following chart shows which benefits under **the Program** are self-insured by the Company and which are fully insured.

### FSA PLAN

The **FSA Plan** is funded by general assets of the Company, based on the salary reduction elections made by participating Employees.

| | | | |
|---|---|---|---|
| **Benefits** | Medical<br>Prescription Drug<br>Dental<br>Vision Care | Weekly Accident & Sickness<br>Flexible Spending Account<br>Long-Term Disability<br>Monthly Disability | Life insurance benefits<br>AD&D |
| **Definition** | As claims are made, covered benefits are paid from the Company's general assets. In addition, the Company has administrative services contracts with third-party administrators to decide on and to process claims. | | An Insurance Carrier is a legal reserve life insurance company selected by the Company that provides administrative services. The Insurance Carrier insures coverages and makes benefit payments. The Company pays premiums to the Insurance Carrier for coverages from its own funds as well as Employee payroll deductions. |



E-FILED
Tuesday, 19 February, 2008  04:40:05 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT B

# GENERAL ADMINISTRATION INFORMATION

## IMPORTANT LEGAL PROVISIONS

### PLAN DOCUMENT

This SPD presents an overview of your benefits. In the event of any discrepancy between this SPD and the official plan documents, the plan documents shall govern. Specifically, when this SPD inadvertently says anything that grants or provides greater rights or benefits to participants than the plan documents, the plan documents govern.

## CLERICAL ERROR

If a clerical error or other mistake occurs, that error does not create a right to benefits. These errors include, but are not limited to, providing misinformation on eligibility or benefit coverages or entitlements. The terms of the plans may not be amended by oral statements by the Company, the Plan Administrator, the Claims Administrator, or any other person. In the event an oral statement conflicts with any term of the plans, the plans' terms will control. It is your responsibility to confirm the accuracy of statements made by the Company or its designees, including the Claims Administrator, in accordance with the terms of this SPD and other plan documents.

### PLAN ADMINISTRATION

The Plan Administrator has the sole and complete discretionary authority to determine eligibility and entitlement to plan benefits and to construe the terms of the plans, including the making of factual determinations. The Plan Administrator shall have the sole discretionary authority to grant or deny benefits under the plans. Benefits under the plans will be paid only if the Plan Administrator decides, in its sole discretion, that the applicant is entitled to them. The decisions of the Plan Administrator shall be final and conclusive with respect to all questions relating to the plans.

The Plan Administrator may delegate to other persons responsibilities for performing certain duties of the Plan Administrator under the terms of the plans and may seek such expert advice as the Plan Administrator deems reasonably necessary with respect to the plans. The Plan Administrator shall be entitled to rely upon the information and advice furnished by such delegates and experts, unless actually knowing such information and advice to be inaccurate or unlawful.

The Plan Administrator has delegated to the Claims Administrators listed in the *Plan Information* chart in the section entitled *Contact Information* the authority described in this *Plan Administration* section, including the authority to determine eligibility and entitlement to plan benefits and to construe the terms of the plans. The Plan Administrator may adopt uniform rules for the administration of the plans from time to time, as it deems necessary or appropriate.

In addition, in certain circumstances, for purposes of overall cost savings or efficiency, the Company may, in its sole discretion, offer benefits under **the Program** for services that would otherwise not be Covered Health Services. The fact that it does so in any particular case shall not in any way be deemed to require it to do so in other similar cases.

### AMENDMENT AND TERMINATION

The Company reserves the sole discretionary right to modify, amend or terminate **the Program** and the FSA Plan or any of the component plans, in whole or part, in any respect, at any time and from time to time, retroactively or otherwise, by a written instrument adopted by its Board of Directors or their designee and duly authorized on behalf of the Company. This right applies to every aspect of **the Program** and the FSA Plan, including but not limited to, benefit coverage levels, services covered and excluded, prescriptions covered and excluded, or any aspect of any network associated with **the Program** and the FSA Plan, whether or not specifically stated with respect to any particular aspect.

If the plans are modified, amended or terminated, you will be notified of the effect of such change on your plan benefits or coverage and/or the benefits and coverage of (or available to) your Dependents. No consent of any employee or any other person will be necessary for the

