IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| CATERPILLAR, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CHARLES WILHELM and GLORIA | ) | Case no. 08-2020 |
| WILHELM, individually and as | ) | |
| Administrators of the Estate of Matthew | ) | |
| Charles Wilhelm, deceased, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN
SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS**

**Introduction**

The plaintiff's complaint against Defendants Charles Wilhelm and Gloria Wilhelm, individually and as administrators of the Estate of Matthew Charles Wilhelm, is inadequate for a number of reasons.  Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint must be dismissed because:

1.	The plaintiff fails to allege that Matthew Charles Wilhelm ("Matthew"), the participant in the plan, received a copy of the summary plan description in question ("SPD") as required by statute and, if he was given a copy, fails to attach proof of delivery of the SPD and a copy thereof.

2.	The plaintiff attempts to assert a claim to insurance proceeds received from an insurance policy belonging neither to Matthew or his estate but rather a policy purchased and owned by Charles Wilhelm and Gloria Wilhelm, individually, which proceeds have been allocated by a state court to a wrongful death claim.

3. The plaintiff attempts to assert a claim to funds that are not funds belonging to Matthew's estate but rather are held for the exclusive benefit of Matthew's next of kin under the Illinois Wrongful Death Statute.

4. The plaintiff's complaint is an inappropriate collateral attack on a state probate court order.

5. The complaint attempts to assert a claim against Charles Wilhelm and Gloria Wilhelm, individually, based on a pension plan to which they are not parties.

## Argument

**1.      The Summary Plan Description**

Every plan must furnish to a plan participant an SPD that includes a description of the benefits and responsibilities of the plan in language calculated to be understood by the average plan participant. 29 U.S.C.S. §§ 1021-1022. The purpose of the SPD is to arm employees with enough information to enable them to enforce their rights. *See*, *Santana v. Deluxe Corp.,* 12 F.Supp.2d 162 (Dist. Mass 1998). Accordingly, when an SPD does not satisfy the disclosure requirements mandated by ERISA, a court may estop a plan administrator from enforcing terms of the plan not included in the SPD but contained in the underlying plan. *See*, *Mers v. Marriott International Group Accidental Death and Dismemberment Plan,* 144 F.3d 1014 (7th Cir. 1998). The plan may not hold the participant to a higher standard under the underlying plan when the SPD does not articulate such a standard. Thus, the plaintiff's claims against Matthew's estate are limited to the terms and conditions of the benefit plan as outlined in the SPD. Further, the SPD cannot give the plan more right than the plan otherwise possessed.

Despite the importance of the delivery of the SPD, the plaintiff fails to allege that it ever delivered an SPD to Matthew and to attach a copy of the summary plan

description which of necessity is the document upon which the plaintiff's claim must be based. When a plan administrator disregards the mandates of the ERISA statute and fails to deliver an SPD to a participant, the participant is permitted by statute to seek "appropriate equitable relief." 29 U.S.C.S. § 1132(a)(3). The Supreme Court has noted that the definition of "appropriate equitable relief" under the ERISA statute refers to, "those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Mertens v. Hewitt Associates,* 508 U.S. 248, 256 (1993). The Tenth Circuit in a case where the plan administrator failed to prove that it delivered an SPD to the participant found that the participant was entitled to "appropriate equitable relief" pursuant to 29 U.S.C.S. § 1132(a)(3). *Callery v. United States Life Insurance Company in the City of New York, et. al.,* 392 F.3d 401 (10th Cir. 2004). In the case at bar, if the plaintiff cannot at least establish that it furnished Matthew with a copy of the SPD and that it's term supported the plaintiff's claim, then equity dictates that plaintiff should be enjoined from attempting to enforce subrogation rights.

Thus, since the plaintiff's complaint fails to allege delivery to Matthew of the SPD and specifically identify and incorporate by reference or set forth verbatim the SPD, it fails to state a claim. Further, the complaint does not set forth the complete plan document which is also relevant in that the summary plan document cannot grant rights that the plan did not have under the plan document.

Accordingly, the complaint must be dismissed.

2.      **The Indiana Insurance Policy**

The plaintiff's complaint attempts to assert a claim against the proceeds of an insurance policy with Indiana Insurance that was purchased and owned by Charles and

3

Gloria Wilhelm and not by Matthew or his estate. The contracting parties under the insurance policy intended the benefit of the contract to flow to Charles and Gloria Wilhelm and not the plaintiff. Thus the plaintiff has no rights to the proceeds under the contract. *See, Polo Ralph Lauren L.P. v. Tropical Shipping & Const. Co., Ltd.,* 215 F.3d 1217 (11th Cir. 200). The contract that Charles and Gloria Wilhelm entered into with Indiana Insurance was a private one between them and their insurer and did not include as a party the plaintiff in this matter. Matthew was not the owner of the Indiana Insurance policy and accordingly did not possess standing to contractually bind the distribution of the policy proceeds. Likewise, Charles and Gloria Wilhelm were not beneficiaries under the benefit plan and thus could not be bound by any agreement between Matthew and the benefit plan.

The plaintiff's complaint must be dismissed with prejudice as to the proceeds of the Indiana Insurance policy.

**3.    The Wrongful Death Allocation**

The Illinois Wrongful Death Act is clear in that the proceeds from a wrongful death action in Illinois are for the exclusive benefit of the surviving spouse and the next of kin of the deceased. 740 ILCS 180/2. The Act specifically provides *inter alia* "the amount recovered in every such action shall be for the exclusive benefit of the surviving spouse and next of kin of such deceased person . . ." Accordingly, funds allocated by the probate court to a wrongful death action in Illinois are not part of the decedent's estate but are merely recovered by the administrator or the special administrator on behalf of the surviving spouse and next of kin. Accordingly, funds allocated to a wrongful death action are not subject to claims of those parties that have claims against the deceased's estate. The plaintiff in this case is inappropriately attempting to assert a claim against

funds properly allocated to the next of kin's wrongful death claim and accordingly the property of the next of kin rather than the estate.

As a precondition to payment of medical bills, or for any other reason, neither the estate nor the next of kin have entered into any contractual agreement with the plaintiff concerning the allocation of any third party recovery or creating a lien against such recovery.[1] In similar fashion to the plaintiff's claims against the Indiana Insurance policy proceeds discussed above, the plaintiff is attempting to assert a claim against funds that are the property of third parties (the next of kin) with which it has no contractual privity. While living, Matthew could not bind his next of kin to contractual obligations under a benefit plan—he could only bind his estate.

While the Seventh Circuit has yet to address a factual situation analogous to the one at bar, the Fourth Circuit has. In *Liberty Corporation v. NCNB National Bank of South Carolina,* 984 F.2d 1383 (4th Cir. 1993) the decedent, Bristow, was struck by an automobile, receiving serious injuries which resulted in his death ten days later. At the time of the occurrence, Bristow was an employee of Liberty Corporation and was covered by its group health plan. The plan paid $93,829.50 for medical bills incurred during the time period between when Bristow was struck by the automobile and when he died.[2] NCNB National Bank of South Carolina was appointed the personal representative of Bristow's estate. A settlement with the driver of the automobile was reached in the

---

[1] Even if the plaintiff had demanded such an agreement and the estate or the next of kin acquiesced and executed the agreement, the agreement would be void and unenforceable as without consideration. The agreement would be a *nudum pactum* as it would only be obligating the plaintiff to do something the plaintiff was already under an obligation to do. *Liberty*, *infra.*

[2] In *Liberty*, the personal representative had entered into a "third-party liability reimbursement agreement" prior to the pension plan payment of medical bills. The Fourth Circuit Court of Appeals found the agreement to be void and unenforceable for lack of consideration.

5

sum of $1,500,000.00. The probate court ordered that the proceeds of the settlement be allocated and distributed in accordance with the North Carolina Wrongful Death Act specifically ordering that the funds were "to be distributed as hereinabove set forth pursuant to the North Carolina Wrongful Death and Intestate Succession Act". The North Carolina Wrongful Death Act is a combined survival act and Lord Campbell's Act (wrongful death act) unlike Illinois which has a separate survival act and Lord Campbell's Act (wrongful death act). The North Carolina Wrongful Death Act states in relevant part:

> "When the death of a person is caused by a wrongful act, neglect or default of another, such as would, if the injured person had lived, have entitled him to an action for damages therefore, the person or corporation that would have been so liable...shall be liable to an action for damages to be brought by the personal representative or collector of the decedent...The amount recovered in such action is not liable to be applied as assets, in the payment of debts or legacies, except as to ...reasonable hospital and medical expenses not exceeding one thousand five hundred dollars ($1,500) incident to the injury resulting in death;...but shall be disposed of as provided in the Intestate Succession Act. N.C. Gen. Stat. § 28A-18-2(a).

NCNB tendered a $1,160 offer to Liberty to compensate the group health care plan for the medical expenses it paid. Liberty rejected the offer and brought an action in federal district court arguing that ERISA preempted the North Carolina Wrongful Death Act and that it was entitled to the full payment of medical benefits it paid out. Both NCNB and Liberty moved for summary judgment. The district court ruled for NCNB finding that ERISA did not preempt the North Carolina Wrongful Death Act and granting NCNB summary judgment. Liberty appealed the ruling and the Fourth Circuit Court of Appeals upheld the district court's ruling.

The Fourth Circuit reasoned that, "The right to recover for wrongful death under section 28A-18-2 (*sic.*, the wrongful death portion of the statute) is not, however, a right that ever belonged to Bristow or to his estate. Rather, it belongs to Bristow's beneficiaries, on whose behalf NCNB pursued the claim." *Liberty* at 1388. The Fourth Circuit additionally found that the recovery under the wrongful death act belongs to the beneficiaries of the deceased, and at no point was part of the decedent's estate. Citing to *Shaw v. Delta Airlines*, the court noted: "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." 463 U.S. 85, 100 (1983). The court held that the provision in the North Carolina Wrongful Death Act fell in this category and accordingly was "too tenuous, remote or peripheral a manner" to warrant preemption. Accordingly, the plan administrator did not have a subrogation right under the group health plan to any wrongful death settlement proceeds in that the proceeds did not belong to the estate. Therefore, the North Carolina Wrongful Death Act did not "relate to" the group health plan within the meaning of ERISA and was not preempted by ERISA. The same is true in the case at bar. The Illinois Wrongful Death Act's allocation of proceeds to the next of kin is not preempted by ERISA.

A year later the Fourth Circuit explained its reasoning in *Liberty* in the case *McInnis v. Provident Life & Accident Insurance Company,* 21 F.3d 586 (4th Dist. 1994). In *McInnis* the husband of the deceased, Lori McInnis, acting as administrator of the Estate of Lori McInnis, attempted to receive payment from the group health plan operated by Lori McInnis' employer for $58,121.00 in medical expenses incurred during the days leading up to his wife's death. The Estate of Lori McInnis had already settled with a third party tort defendant responsible for the injuries leading to Lori McInnis' death for

7

$200,000.00 under the combined survival act and wrongful death act with the proceeds not being allocated between the two claims. Rather, the probate court found that the settlement, "was in the **best interest of the Estate of Lori Smith McInnis and the beneficiaries of said estate**…" *Id* at 587 emphasis added.

The benefit plan offered to pay the medical expense claim conditioned upon the execution of an "Acts of Third Party Agreement". Relying on *Liberty*, the administrator, who was also the surviving spouse, refused to sign such an agreement and filed suit to compel payment contending that the Acts of Third Party Agreement contradicted the North Carolina Wrongful Death Act limitations that allowed only a $1,500.00 payment for medical expenses. The Fourth Circuit explained that in *Liberty* it found that the recovery which was allocated solely to the next of kin under the wrongful death portion of the statute belonged only to the next of kin of the deceased and that accordingly the claim was too remote to the group health care plan and did not relate to the plan and accordingly was not subject to the ERISA preemption. In *McInnis*, the Fourth Circuit found that the damages recovered as settlement clearly included those belonging to McInnis' estate as well as to the next of kin and accordingly, ERISA allowed for recovery.

As was the case in *Liberty*, in the case at bar, the funds which the plaintiff seeks to recover are funds that were allocated by the probate court to the wrongful death action and thus protected from the claims of creditors including the benefit plan. In *McInnis*, there was no allocation of the funds thus distinguishing *McInnis* from the case at bar. The portion of the settlements with both Erie Insurance and Indiana Insurance which were allocated by the probate court to Matthew's next of kin under the Illinois Wrongful Death Act and not to his estate are not subject to any claim of the plaintiff. The challenge

8

provision of the Illinois Wrongful Death Act is not preempted by ERISA. In the absence of ERISA preemption, Illinois law applies and the plaintiff has no claim to wrongful death proceeds since such proceeds are for the exclusive benefit of Matthew's next of kin.

Accordingly, the complaint must be dismissed with prejudice as to the recoveries allocated to the wrongful death claim.

**4.    Improper Collateral Attack**

The plaintiff's complaint against the defendants in this matter is an improper collateral attack upon a proper probate court allocation. The defendants, in their capacity as representatives of Matthew's estate, provided adequate notice to the plaintiff. Prior to February 19, 2008, the estate had received no lien claim from Caterpillar, Inc. for the benefit plan. Rather, the estate received a communication dated February 9, 2007, from Ingenix purporting to be on behalf of United Healthcare Services, and thereafter received a letter from Ingenix dated May 31, 2007, that contained the reference "Group/Client: Caterpillar/United Healthcare Services". Copies of the letters are attached to the defendants' motion to dismiss.

On June 5, 2007 Matthew's estate gave notice to Ingenix of a hearing taking place on June 29, 2007 to allocate the proceeds of the settlement with Jennifer Stark (Erie Insurance). The notice is attached to the defendants' motion to dismiss. No representative of the plaintiff appeared. Furthermore, on December 11, 2007, Matthew's estate gave notice to Ingenix of a hearing on January 9, 2008 to allocate the proceeds of settlement with Indiana Insurance. The notice is attached to the defendants' motion to dismiss.

9

On or about January 3, 2008, one of plaintiff's attorney, Mr. Belofsky, left a telephone message for Joseph W. Phebus, one of the attorneys for the defendants, who was then out of his office. Mr. Phebus returned the telephone call on January 8, 2008.[3] At that time, Mr. Belofsky requested that the hearing scheduled for January 9, 2008 be vacated to which request Mr. Phebus advised that he could not agree as notice had been given to other interested parties and that accordingly the hearing would proceed on January 9, 2008.  The plaintiff chose not to appear in writing, by counsel or by local counsel at the January 9 hearing. Rather, the plaintiff is inappropriately, collaterally attacking the probate court's order in this court.  A court's order cannot be collaterally attacked simply on the grounds that it was erroneous. *See*, *Hospital Underwriting Group v. Summit Health*, 63 F.3d 486 (6th Cir. 1995).  The order may only be attacked if the rendering court lacked jurisdiction, the court acted in excess of jurisdiction, or the judgment was obtained by extrinsic fraud. *Id.*  None of which is asserted in the case at bar.  In the probate proceeding, Matthew's estate provided adequate notice to the plaintiff to meet the requirements of due process.  In any event, a due process argument must be raised in the underlying state court proceeding.

The plaintiff's complaint should be dismissed with prejudice.

**5.     The Claim Against the Wilhelms Individually**

The defendants also contest the inclusion of Charles Wilhelm and Gloria Wilhelm individually in this matter.  A separate motion and memo in this regard has been previously filed.

---

[3] Notice of the hearing was mailed to Ingenix on December 11.  It had been forwarded to plaintiff's attorney no later than January 3, 2008, as evidenced by the telephone message. Accordingly, the plaintiff had adequate time after notice to participate in the January 9 hearing.

10

## Conclusion

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, this Court should dismiss the complaint with prejudice as to the portions of the recoveries allocated to the wrongful death claim.

Further, plaintiff's attempt to assert a claim against the proceeds of the settlement with Indiana Insurance Company should be dismissed with prejudice.

Further, the plaintiff's claim should be dismissed with prejudice as to the Wilhelms individually.

Finally, the plaintiff's claim as to the third party recovery from Erie Insurance that was allocated to the estate should be dismissed for failure to make the necessary allegations as to the Summary Plan Description.

>CHARLES WILHELM and GLORIA WILHELM, individually and as Administrators of the Estate of Matthew Charles Wilhelm, deceased, Defendants, by one of their attorneys, Joseph W. Phebus of the firm of PHEBUS & KOESTER
>
>s/ J.W. PHEBUS
>J. W. PHEBUS
>Attorney for Defendants
>PHEBUS & KOESTER
>136 West Main Street
>Urbana, Illinois 61801
>Telephone: (217) 337-1400
>Fax: (217) 337-1607
>*jwphebus@phebuslaw.com*

### CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of March, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Douglas Belofsky
Attorney for Plaintiff
BELOFSKY & BELOFSKY PC
33 North Dearborn Street, Suite 2330
Chicago, Illinois 60602
Telephone: (312) 759-3737
Fax: (312) 759-1262
E-mail:  *Douglas@Belofsky.com*

Lance R Minor
Attorney for Plaintiff
BELOFSKY & BELOFSKY PC
33 North Dearborn Street, Suite 2330
Chicago, Illinois 60602
Telephone: (312) 759-3737
Fax: (312) 759-1262
E-mail:  *Lance@belofsky.com*

and I hereby certify that I have mailed by United States Postal Service the documents to the following non CM/ECF participants:

David A Belofsky
Attorney for Plaintiff
BELOFSKY & BELOFSKY PC
33 North Dearborn Street, Suite 2330
Chicago, Illinois 60602
Telephone: (312) 759-3737
Fax: (312) 759-1262

s/   J.W. PHEBUS
J. W. PHEBUS
Attorney for Plaintiff
PHEBUS & KOESTER
136 West Main Street
Urbana, Illinois 61801
Telephone:  (217) 337-1400
Fax:  (217) 337-1607
*jwphebus@phebuslaw.com*

*F:\DOCS\JOE\WILHELM\memo supp 12 b 6.doc*