IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| CATERPILLAR INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:08-CV-02020-MPM-DGP |
| | ) | |
| CHARLES WILHELM AND GLORIA | ) | |
| WILHELM, INDIVIDUALLY AND AS | ) | |
| ADMINISTRATORS OF THE ESTATE OF | ) | |
| MATTHEW CHARLES WILHELM, DECEASED, | ) | |
| | ) | |
| Defendants. | ) | |

**CATERPILLAR'S CONSOLIDATED RESPONSE
TO DEFENDANTS' MOTIONS TO DISMISS**

NOW COMES Caterpillar Inc. ("Caterpillar"), by and through its attorneys, David A. Belofsky, Douglas M. Belofsky and Lance R. Minor of Belofsky & Belofsky, P.C., and submits this combined response in opposition to the Rule 12(b)(6) motions to dismiss filed by Defendants, Charles Wilhelm ("Charles") and Gloria Wilhelm ("Gloria") as individuals and as administrators of the Estate of Matthew Charles Wilhelm, deceased (the "Estate").

**INTRODUCTION**

Defendants have filed two motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Docket Nos. 9 and 12) asserting that the Amended Complaint should be dismissed for failure to state a cause of action. While the motions include factual assertions and affirmative matters far beyond the allegations of the Amended Complaint[1], their attacks on the sufficiency of the Amended Complaint can be distilled into four arguments: (1) the Illinois

---

[1] On May 13, 2008, this Court entered a Text Order wherein it stated that it had reviewed the motions to dismiss and determined that "matters outside the pleadings are either referred to or submitted as exhibits." The Court determined that "the matters outside the pleadings will be excluded by the Court."

Wrongful Death Act, 740 ILCS 180/1, *et seq.* precludes recovery by Caterpillar; (2) the individual Defendants are not proper parties; (3) proceeds from an uninsured motorist policy cannot be reached by an ERISA plan's reimbursement provision; and (4) the Amended Complaint does not include a copy of the Summary Plan Description ("SPD") as an attachment.

## STATEMENT OF FACTS

Caterpillar is Plan Administrator of a self-funded health benefit plan it maintains for its eligible employees and their family members (the "Plan").[2] Amended Complaint ¶ 1. It has filed suit against Charles and Gloria as individuals and as administrators of the Estate seeking certain equitable relief concerning the Plan's right to be reimbursed for the medical benefits it provided for the treatment of injuries Matthew Charles Wilhelm ("Matthew") sustained in an accident caused by a third party that occurred on September 2, 2006 (the "accident").[3] Matthew survived the accident, but subsequently died of the injuries he sustained in the accident on or about September 8, 2006 following hospitalization and surgery. Amended Complaint ¶ 10.

At and after the time of the accident, Matthew was a participant of the Plan. Amended Complaint ¶ 4. His parents, acting individually and/or as administrators of the Estate, submitted claims for medical benefits to the Plan for the treatment of the injuries Matthew sustained in the accident. Amended Complaint ¶ 13. The Plan provided $72,799.79 in medical benefits for the treatment of the injuries Matthew sustained in the accident in accordance with the terms and

---

[2] The Amended Complaint alleges that Caterpillar exercises discretionary authority or control respecting management of the Plan, discretionary authority or control respecting management or disposition of Plan assets, and/or discretionary authority or discretionary responsibility in the administration of the Plan, and is therefore a fiduciary of the Plan within the meaning of Section 3(21)(A) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1002(21)(A). Amended Complaint ¶ 6.

[3] Caterpillar is empowered to bring this action as a fiduciary of the Plan pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3). Amended Complaint ¶ 6.

conditions of the Plan document, including certain subrogation and reimbursement provisions thereof.[4]  Amended Complaint ¶¶ 12, 14-15.

Following the accident, Charles and Gloria pursued claims for damages sustained by Matthew in the accident.  The third party tortfeasor's insurance was insufficient to cover all of the damages Matthew sustained in the accident, and her insurer has offered to pay, is about to pay or has recently paid to the Estate policy limits in the amount of $100,000 in settlement of its claims.  Amended Complaint ¶ 16.  Additionally, the Estate brought a claim for underinsured motorists benefits against the Indiana Insurance Company under a policy issued to Gloria and Charles, and the insurer has offered to pay, is about to pay or has recently paid to the Estate policy limits of $500,000 in settlement of its claims.  Amended Complaint ¶ 17.

Caterpillar has requested that Charles and Gloria and the Estate reimburse it in the amount of $72,799.79 for the medical benefits Matthew received prior to his death in accordance with the requirements of the Plan's subrogation and reimbursement provisions, but they have refused to do so and no reimbursement has to-date been made.  Amended Complaint ¶¶ 18, 20.  Rather than honoring the Plan's subrogation and reimbursement provisions, Charles and Gloria have assigned or are attempting to assign a disproportionately large amount of the Estate's recoveries to claims for wrongful death that allegedly accrued in their favor upon the death of Matthew for the purpose of avoiding and circumventing their reimbursement obligations.  Id.

The Plan's subrogation and reimbursement provision expressly states that "if the injury or condition giving rise to subrogation or reimbursement involves the wrongful death of a Program beneficiary, this section applies to the personal representative of the deceased Program beneficiary."  Amended Complaint ¶ 19.  The Plan has determined that the Estate, as the

---

[4] The material portions of the Plan setting forth its subrogation and reimbursement requirements are attached to the Amended Complaint as Exhibit A.

recipient of the pleaded recoveries, is required to reimburse the Plan for the benefits it provided in treatment of the injuries Matthew sustained in the accident, and further, that the Plan does not permit Gloria and Charles to re-characterize amounts received by the Estate to be recoveries on claims for wrongful death. Amended Complaint ¶ 22. In accordance with the Plan document, "[t]he Plan Administrator has the sole and complete discretionary authority to determine eligibility and entitlement to plan benefits and to construe the terms of the plans, including the making of factual determinations." Amended Complaint ¶ 21.

Caterpillar has alleged that the Defendants have willfully disregarded the Plan provision which states that "you will do nothing to prejudice the Program's rights under this provision, either before or after the need for services or benefits under the Program," and has additionally alleged that the Defendants have willfully disregarded the Plan provision which states that "you will not accept any settlement that does not fully compensate or reimburse the Program without written approval." Amended Complaint ¶¶ 24-25.

The Plan provides, as a condition to the receipt of benefits, that the participant will "hold in trust for our benefit under these subrogation provisions any proceeds of settlement or judgment." Amended Complaint ¶ 26. It has been alleged that the "Defendants now or shortly will hold for the benefit of the Plan proceeds of settlement in an amount no less than $72,799.79." Amended Complaint ¶ 27. Caterpillar seeks certain equitable relief against the Defendants, including that a constructive trust be impressed upon no less than $72,799.79 in funds intended to be paid to or received by Defendants from any recovery made as compensation for injuries caused by the acts of a third party, and that they be enjoined from interfering with the Plan's rights to reimbursement and/or characterizing amounts received by the Estate as

recoveries on claims for wrongful death for the purpose of unlawfully defeating the Plan's right to reimbursement. Amended Complaint at 6-7.

## ARGUMENT

**I.    CATERPILLAR HAS PROPERLY PLEADED A CLAIM UNDER SECTION 502(a)(3)(B) OF ERISA AGAINST ALL OF THE DEFENDANTS.**

Caterpillar's Amended Complaint expressly alleges that

> Jennifer Stark's insurance was insufficient to cover the damages sustained by Matthew in the accident, and her insurer has offered to pay, and on information and belief is about to pay or has recently paid to the Estate of Matthew Charles Wilhelm, policy limits in the amount of $100,000 in settlement of all of its claims arising out of the accident.
>
> The Estate of Matthew Charles Wilhelm has brought a claim for underinsured motorists benefits against the Indiana Insurance Company under a policy issued to Gloria and Charles, and the insurer has offered to pay, and on information and belief is about to pay or has recently paid to the Estate of Matthew Charles Wilhelm, policy limits of $500,000 in settlement of all of its claims arising out of the accident.
>
> Caterpillar has requested that Charles and Gloria and the Estate of Matthew Charles Wilhelm reimburse it in the amount of $72,799.79 for the medical benefits Matthew Charles Wilhelm received prior to his death for treatment of the injuries he sustained in the accident, but Charles and Gloria and the Estate of Matthew Charles Wilhelm have failed and refused to comply with the requirements of the Plan's subrogation and reimbursement provisions and have disputed the obligation to repay the medical benefits that Matthew received out of the proceeds of the Estate's recoveries. Rather than honoring the Plan's subrogation and reimbursement provisions, Charles and Gloria have assigned or are attempting to assign a disproportionately large amount of the Estate's recoveries as aforesaid to claims for wrongful death that allegedly accrued in their favor upon the death of Matthew.

Amended Complaint ¶¶ 16-18.

**A.    The Defendants' Attempt to Subvert the Plan's Reimbursement Requirement by Wrongfully Attempting to Convert the Estate's Recovery to a Wrongful Death Recovery is Preempted by ERISA.**

The Defendants argue that Caterpillar has no right to reimbursement from the funds that they sought to allocate to their wrongful death action because the proceeds from a wrongful

5

death action are for the exclusive benefit of the surviving spouse and the next of kin of the deceased. But Caterpillar's Amended Complaint expressly alleges that "Charles and Gloria have assigned or are attempting to assign a disproportionately large amount of the Estate's recoveries as aforesaid to claims for wrongful death that allegedly accrued in their favor upon the death of Matthew." Amended Complaint ¶ 18. Caterpillar is thus not seeking reimbursement from a wrongful death recovery made on behalf of Charles and Gloria, but instead from the Estate's recovery on the personal injury claim that inured to Matthew prior to his death. The issue raised by Caterpillar's Amended Complaint is not whether Caterpillar can properly seek reimbursement from a wrongful death claim prosecuted by Charles and Gloria, but whether Charles and Gloria can subvert the Plan's reimbursement requirement by wrongfully attempting to allocate the Estate's tort recovery to their own wrongful death recovery.

The tort claims that inured to Matthew's benefit before his death passed to the Estate pursuant to Illinois' Survival Act. 755 ILCS 5/27-6 (2008). Upon Matthew's death, Illinois' Wrongful Death Act provided Charles and Gloria with their own cause of action. That statute states, in pertinent part:

> Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.

740 ILCS 180/1 (2008).[5] But to the extent that Illinois' Wrongful Death Act provides Charles and Gloria a vehicle through which to apportion the Estate's recovery for Matthew's injuries to

---

[5] P.A. 89-7, which amended this provision in a manner not relevant to this case, was held to be unconstitutional in Best v. Taylor Mach. Works, 179 Ill. 2d 367, 689 N.E.2d 1057 (1997).

6

their own recovery for their wrongful death claims, it is preempted by ERISA. As the Defendants recognize through their citation of Liberty Corp. v. NCNB Nat'l Bank, 984 F.2d 1383 (4th Cir. 1993), and McInnis v. Provident Life & Acc. Ins. Co., 21 F.3d 586 (4th Cir. 1994), this issue is actually one of ERISA preemption. Section 514(a) of ERISA provides that ERISA supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a) (2008). As the Seventh Circuit has recited, "[t]he Supreme Court has consistently reminded us that ERISA's preemption of state laws as enunciated in § 514(a) is 'clearly expansive,' and we have likewise interpreted the provision broadly." Kannapien v. Quaker Oats Co., 507 F.3d 629, 640 (7th Cir. 2007) (quoting Eglehoff v. Egelhoff, 532 U.S. 141, 146 (2001)).

In McInnis v. Provident Life & Acc. Ins. Co., the Fourth Circuit held that a limitation on the right to recover medical benefits contained in North Carolina's wrongful death statute was preempted by ERISA to the extent that it precluded an ERISA plan's right to seek reimbursement of medical expenses from the decedent's estate. There, the ERISA plan refused to pay medical benefits for the treatment of the injuries sustained by the decedent as a result of an automobile accident caused by a drunk driver unless the administrator of her estate complied with the plan's requirement that he sign an agreement to reimburse the plan out of any tort recovery against the driver responsible for the accident. The administrator refused, citing a prohibition in North Carolina's wrongful death statute against recovering more than $1,500 in hospital and medical expenses from the tortfeasor. The administrator thereafter sued the ERISA plan for the withheld benefits.

The Fourth Circuit in McInnis distinguished its prior decision in Liberty Corp. v. NCNB Nat'l Bank, in which it held that ERISA's preemption provision did not reach a claim brought solely under North Carolina's wrongful death statute:

> When we found in Liberty that a damage claim under [North Carolina's wrongful death statute] belonged *to the beneficiaries* of the deceased plan participant (damages typical of a wrongful death claim), we concluded that it was too remote to be "related to" the plan and be preempted by ERISA. But we recognized that had the damage claim belonged *to the decedent or to her estate* (damages typical of a survival statute), then the state law claim could relate to a plan within the scope of ERISA's preemptive provision.

McInnis, 21 F.3d at 589-90 (emphasis in original). The McInnis court found that "the damages recovered as settlement clearly included those belonging to Lori McInnis and her estate," and accordingly held that North Carolina's wrongful death statute was preempted to the extent that it precluded operation of the ERISA plan's reimbursement provision. 21 F.3d at 590.

> We will thus give the plan's terms and conditions full effect, because to do otherwise would undermine not only the agreement between the parties but the expectations of all other plan participants who have an interest in the plan's funds and benefits. The plan in this case did not undertake to be responsible ultimately for medical expenses caused by third parties, but only to advance those expenses with the expectation of reimbursement. A state statute that would alter these benefits would impermissibly interfere in an area preempted by ERISA.

Id. The Defendants' reliance upon Liberty Corp. v. NCNB Nat'l Bank in the instant case is misplaced because Caterpillar has expressly alleged that it is seeking reimbursement from the settlement of tort claims belonging to Matthew and his Estate.

Courts have followed McInnis to find that attempts to allocate tort settlements between survivor's claims and wrongful death claims in order to defeat an ERISA plan's reimbursement requirement, like the Wilhelms are attempting in the instant case, are preempted by ERISA. In Estate of Allen v. Wal-Mart Stores, Inc., Assocs.' Health and Welfare Plan, 196 F. Supp. 2d 780 (E.D. Ark. 2002), the estate of a deceased ERISA plan participant sought to have a wrongful death settlement with the tortfeasor responsible for the participant's death approved by a state

8

court, and to have the proceeds distributed entirely to the participant's survivors. The estate claimed that Arkansas' wrongful death statute provided that the settlement proceeds would pass directly to the wrongful death beneficiaries and were not property of the estate. The ERISA plan removed the action to federal court, where it argued that Arkansas' wrongful death statute was preempted by ERISA to the extent that it precluded the plan from recovering the medical benefits it provided to the participant before his death. Relying upon Eglehoff v. Egelhoff, 532 U.S. 141 (2001), which it described as holding "that a state law governing probate distribution which also affects the manner in which health benefits are paid to and from an ERISA-covered plan is preempted by ERISA," the federal court agreed with the ERISA plan. 196 F. Supp. 2d at 783. "Here, as in Egelhoff, the Plan terms yield a different result as to how plan assets are to be recovered than how the Arkansas Wrongful Death Statutes [sic] does. The wrongful death statute would allow the monies recovered by the Estate to pass to the beneficiaries without being subject to the Plan's reimbursement provision." Id.

Thomas v. Administrative Comm. of the Wal-Mart Stores, Inc. Assocs. Health and Welfare Plan, 210 F. Supp. 2d 1296 (M.D. Fla. 2002), also involved a request for approval of a wrongful death settlement distribution that was removed to federal court by an ERISA plan. The court in that case followed McInnis and held "that the Florida wrongful death statutes are preempted by ERISA, to the extent that the state law precludes operation of the Plan's reimbursement provision." 210 F. Supp. 2d at 1300. The estate's settlement of the wrongful death claim resulting from [the ERISA plan participant's] injuries is sufficiently 'connected with' the Plan's right to reimbursement for any medical expenses paid on her behalf under the Plan." 210 F. Supp. 2d at 1301.

9

Thus, the Defendants' attempt to use Illinois' Wrongful Death Act to allocate the Estate's recovery for Matthew's tort claims under Illinois' Survivor's Act is preempted by ERISA.

### B. Charles and Gloria are Proper Defendants to a Claim Brought Pursuant to Section 502(a)(3)(B) of ERISA.

In their motion to dismiss claims brought against them in their capacities as individuals, Charles and Gloria claim that they were not plan participants and therefore were not subject to or bound by the terms of the Plan. By this argument, Charles and Gloria apparently seek to establish that they are not proper parties to this action. But Caterpillar brought its claims pursuant to Section 502(a)(3)(B) of ERISA, which authorizes civil actions:

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.

29 U.S.C. § 1132(a)(3)(B) (2008). Because the Supreme Court has held that "502(a)(3) admits of no limit . . . on the universe of possible defendants," Harris Trust & Savs. Bank v. Salomon Smith Barney Inc., 530 U.S. 238 (2000), the Wilhelms' argument is a non-starter. In Harris Trust, the Supreme Court held that a non-fiduciary may be a proper defendant under Section 502(a)(3) if it would be a proper defendant under "the common law of trusts," id. at 250, for example, when it is "a transferee of ill-gotten trust assets . . ." Id. at 251.

Caterpillar's Amended Complaint alleges that Charles and Gloria are the transferees of "ill-gotten trust assets." It specifically alleges that:

> Caterpillar has requested that Charles and Gloria and the Estate of Matthew Charles Wilhelm reimburse it in the amount of $72,799.79 for the medical benefits Matthew Charles Wilhelm received prior to his death for treatment of the injuries he sustained in the accident, but Charles and Gloria and the Estate of Matthew Charles Wilhelm have failed and refused to comply with the requirements of the Plan's subrogation and reimbursement provisions and have disputed the obligation to repay the medical benefits that Matthew received out of the proceeds of the Estate's recoveries. Rather than honoring the Plan's subrogation and reimbursement provisions, Charles and Gloria have assigned or

10

>are attempting to assign a disproportionately large amount of the Estate's recoveries as aforesaid to claims for wrongful death that allegedly accrued in their favor upon the death of Matthew.

Amended Complaint ¶ 18. They are thus appropriate defendants in the instant action.

Caterpillar's Amended Complaint seeks, *inter alia*, the imposition of a constructive trust upon the funds intended to be paid to or received by Defendants from any recovery made as compensation for Matthew's injuries and an injunction against the Defendants' interference with the Plan's rights to reimbursement. Since the United States Supreme Court's 2006 decision in Sereboff v. Mid Atlantic Medical Servs., Inc., 547 U.S. 356 (2006), it has been clear that the claims asserted in the instant case by Caterpillar seek "to obtain other appropriate equitable relief" under Section 502(a)(3)(B) of ERISA. In Sereboff, the Court held that "one feature of equitable restitution [that is 'appropriate equitable relief' under Section 502(a)(3)(B)] was that it sought to impose a constructive trust or equitable lien on 'particular funds or property in the defendant's possession.'" 547 U.S. at 362 (quoting Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213 (2002)).

Courts in this circuit have interpreted Sereboff as requiring a plaintiff to seek equitable remedies such as a constructive trust or restitution from a particular fund from the defendant, and not just from the defendant's assets generally. See United Air Lines, Inc. Retirement & Welfare Admin. Comm. v. Van Slyck, 2008 U.S. Dist LEXIS 22464, *8-9 (N.D. Ill. Mar. 19, 2008) (overpayment of disability payments); GE Group Life Assurance Co. v. Kurczak, 483 F. Supp. 2d 671, 677 (N.D. Ill. 2007) (action seeking restitution from Social Security award). As Caterpillar seeks equitable remedies in the instant case against a specifically-alleged fund, the $500,000 settlement to be paid to the Estate under its claim for underinsured motorists benefits against the Indiana Insurance Company under a policy issued to Gloria and Charles, Amended

Complaint ¶ 17, it has stated a claim for "appropriate equitable relief" under Section 502(a)(3)(B) of ERISA against all of the Defendants.

    **C.    Caterpillar is Properly Seeking Reimbursement From Proceeds of a Third Party Recovery.**

There is no meaningful distinction between Caterpillar obtaining reimbursement from Matthew's tortfeasor's insurance policy or the policy purchased by Charles and Gloria. As the Seventh Circuit recited in Health Cost Controls of Ill., Inc. v. Washington, 187 F.3d 703 (7th Cir. 1999), cert. denied, 528 U.S. 1136 (2000), a case involving an ERISA plan's reimbursement from a participant's uninsured motorist coverage:

> The obvious purpose of the quoted language is to prevent double payment for the same claim. Had Washington been hit by an insured motorist, she would, she concedes, have been obligated to allow Health Cost to obtain reimbursement for the plan's medical expenses from the motorist, which is to say, as a practical matter, the motorist's insurer. We cannot fathom why it should make any difference if the motorist happens not to have any insurance, so that the victim's insurer picks up the slack.

187 F.3d at 712. There is thus no merit to any of the arguments advanced by the Defendants in opposition to the substance of the claim asserted against them by Caterpillar concerning the Wilhelms' uninsured/underinsured motorist coverage.

**II.    PLAINTIFF NEED NOT PLEAD THAT IT DELIVERED AN SPD TO THE PLAN PARTICIPANT NOR ATTACH TO ITS PLEADINGS A COPY OF THE DELIVERED DOCUMENT.**

Defendants also assert that Caterpillar has failed to state a claim because it did not allege that it delivered a copy of the SPD to Matthew or attach a copy of the SPD to the Amended Complaint. ERISA claims, however, "are subject to no pleading standard more stringent than Rule 8 of the Federal Rules of Civil Procedure." Spano v. Boeing Co. Employees Benefits Plans Comm., 2007 U.S. Dist. LEXIS 28774, *5 (S.D. Ill. Apr. 17, 2007). Rule 8 only requires that the Amended Complaint contain "a short and plain statement of the claim showing that the pleader is

entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "No technical form is required." Fed. R. Civ. P. 8(d)(1). There is no rule or other legal requirement that mandates the attachment of the SPD to a complaint alleging a section 502(a)(3) claim under ERISA.

As support for their position, Defendants cite to a general line of caselaw that discusses the function of SPDs and how plan administrators may be estopped from enforcing the terms of their plan when the SPD is in conflict with the plan. See, e.g., Mers v. Marriott Int'l Group Accidental Death and Dismemberment Plan, 144 F.3d 1014, 1024 (7th Cir. 1998). But this line of caselaw would only be relevant if it appeared from the pleadings that there was a material conflict between the terms of the Plan and its SPD. Since there is no conflict apparent from the well pleaded allegations of the Amended Complaint, the Defendants' argument lacks merit. There is no caselaw known to Plaintiff that requires the absence of a material conflict between the plan and the summary plan description to be pleaded as an element of a claim brought under section 502(a)(3) of ERISA. See Administrative Comm. of the Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Varco, 338 F.3d 680, 692 (7th Cir. 2003), cert. denied, 542 U.S. 945 (2004) (upholding the express terms of a health and welfare plan governed by ERISA, and stating that an ERISA plan is entitled to full reimbursement without offset for the fund doctrine where "the unambiguous language of the Plan obligates [the plan participant] to repay the benefits paid in full without a pro rata deduction for her legal expenses.").

## CONCLUSION

WHEREFORE, Plaintiff, Caterpillar, Inc., prays that this Honorable Court deny the Rule 12(b)(6) motions to dismiss filed by Defendants, Charles Wilhelm, Gloria Wilhelm and the Estate of Matthew Charles Wilhelm.

Respectfully submitted,

Caterpillar, Inc.


By:   /s/ Lance R. Minor
      One of its Attorneys


David A. Belofsky
Douglas M. Belofsky
Lance R. Minor
Belofsky & Belofsky, P.C.
33 North Dearborn Street
Suite 2330
Chicago, Illinois 60602
312.759.3737

**CERTIFICATE OF SERVICE**

    Lance R. Minor, an attorney duly authorized to practice law in the United States District Court for the Central District of Illinois, certifies that he caused a copy of Caterpillar's Consolidated Response to Defendants' Motions to Dismiss to be filed with the Court's CM/ECF system on May 21, 2008.

                                                    /s/ Lance R. Minor