UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| CATERPILLAR, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 08-CV-2020 |
| ) | |
| CHARLES WILHELM and GLORIA ) | |
| WILHELM, individually and as ) | |
| Administrators of the Estate of Matthew ) | |
| Charles Wilhelm, deceased, ) | |
| ) | |
| Defendants. ) | |

**OPINION**

This case is before the court for ruling on the Motion for Summary Judgment (#29) filed by Defendants, Charles and Gloria Wilhelm, and the Motion for Summary Judgment (#38) filed by Plaintiff Caterpillar, Inc. (Caterpillar). This court has carefully reviewed the arguments of the parties and the documents filed by the parties. Following this careful and thorough review, Defendants' Motion for Summary Judgment (#29) is GRANTED and Caterpillar's Motion for Summary Judgment is DENIED (#38).

FACTS

Matthew Charles Wilhelm, decedent, suffered a catastrophic brain injury when he was struck by an automobile on September 2, 2006, resulting in his death on September 8, 2006. Wilhelm was riding a bike when he was struck from behind by a vehicle driven by Jennifer Stark, who was distracted while downloading ringtones to her cell phone. Wilhelm accrued $72,799.79 in hospital bills that were paid by Caterpillar under Wilhelm's employee benefits

plan. Stark was insured by Erie Insurance Company (Erie), which provided $100,000 in coverage under the liability endorsement. Defendants, who were appointed administrators of Wilhelm's estate, were owners of an insurance policy with a $500,000 limit with Indiana Insurance Company (Indiana).

A proposed settlement for $100,000 was negotiated between Erie and Defendants. A Petition for Authorization was filed in state court and a hearing was set for June 29, 2007. Notice was sent to Ingenix Subrogation Services (Ingenix), a United HealthCare Services (Caterpillar's health care insurance representative) subsidiary company. Ingenix received the notice on June 8, 2007. The hearing was held and an order was entered by the state court approving the settlement and allocating the proceeds between wrongful death and all other claims, with $99,500 going towards Defendants' claim under the Illinois Wrongful Death Act (740 Ill.Comp.Stat. 180/1 (West 2008)) and $500 going to other claims of the estate, including under the Illinois Survival Act (755 Ill.Comp.Stat. 5/27-6 (West 2008))..

Defendants then negotiated a proposed settlement of the underinsured motorist claim against Indiana for the policy limit of $400,000 ($500,000 less the $100,000 recovered from Erie). On November 19, 2007, Wilhelm's estate filed a Petition for Authorization in state court for the Indiana claim. Carol Sachtsale, Ingenix's attorney, and the attorneys for Wilhelm's estate corresponded about Ingenix's possible subrogation lien for Wilhelm's medical bills and how it related to the insurance settlements. Notice was sent to Ingenix on December 11, 2007, concerning the Indiana settlement proceed allocation hearing to be held in state court on January 9, 2008. On January 3, 2008, attorney James Kearns, who represented Indiana, received a call from Caterpillar's attorney David Belofsky. Belofsky called to discuss a potential subrogation

lien in the Wilhelm case. On January 4, 2008, in response to the telephone call, Kearns sent Belofsky a letter referencing the prior day's telephone conversation. The letter to Belofsky concluded with:

> "My file reflects that notice was given of the petition authorizing settlement to the University of Illinois, Carle Foundation Hospital, Carle Clinic Association and Ingenix, the only companies I was aware of who had potential claims against the settlement proceeds. I attach the Notice of Hearing on the petition to settle which was served on all those parties.
>
> Let me know if you have any other questions."

In his affidavit, Joseph W. Phebus, attorney for Defendants, stated that on or about January 3, 2008, Caterpillar attorney Belofsky left a phone message for him wanting to speak with Phebus concerning the January 9, 2008 Indiana settlement hearing. Phebus, who had been out of state, returned Belofsky's call on January 8, 2008. During the conversation, Belofsky requested the January 9 settlement hearing be vacated, but Phebus said he "could not agree as notice had been given to other interested parties and that accordingly the hearing would proceed on January 9, 2008."

The hearing was in fact held on January 9, and two days later an order was entered by the state court approving the settlement and allocating all $400,000 to Defendants for wrongful death. Caterpillar, by its attorneys or otherwise, never entered an appearance in the Wilhelm estate proceedings. Moreover, Caterpillar never contested the validity of the state court's orders or filed an appeal. Caterpillar claims that neither it nor Ingenix were ever named as a party to the state court action, nor were they ever served with any legally sufficient process.

Caterpillar brought this current federal action on January 23, 2008, under the Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1132(e)(1)) (hereinafter "ERISA"). Caterpillar seeks $72,799.79 in funds it believes it is owed for the medical payments it made. Caterpillar claims it is entitled to the funds from the $500,000 collected by Defendants in insurance proceeds relating to the accident. Caterpillar says it has never been reimbursed for the medical bills it paid on the deceased's behalf through Caterpillar's employee benefits plan. The plan's subrogation and reimbursement provisions state that "if the injury or condition giving rise to subrogation or reimbursement involves the wrongful death of a Program beneficiary, this section applies to the personal representative of the deceased Program beneficiary."

In its Complaint, Caterpillar alleged that Wilhelm's estate is required to reimburse the plan for the benefits it provided in treatment of the injuries Wilhelm sustained in the accident, and further, that the plan does not permit Defendants to recharacterize amounts received by Wilhelm's estate to be recoveries for wrongful death. Caterpillar claims that the plan's right to subrogation and reimbursement are exclusively governed by material provisions of ERISA and terms of the plan. Caterpillar claims that Defendants have wilfully disregarded the plan provisions that state "you will do nothing to prejudice the Program's rights under this provision, either before or after the need for services or benefits under the Program" and "you will not accept any settlement that does not fully compensate or reimburse the Program without written approval."

The plan provides, as a condition to the receipt of benefits, that the participant will "hold in trust for our benefit under these subrogation provisions any proceeds of settlement or judgment." According to Caterpillar, Defendants hold for the benefit of the plan proceeds of

settlement in an amount no less than $72,799.79.

## SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(b), "a party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Defendants' Motion for Summary Judgment Pursuant to Rule 56 and for Judgment on the Pleadings Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (#29) argues that the claims asserted under the Illinois Wrongful Death Act for their own loss are not subject to ERISA preemption and that, while Caterpillar may be entitled to the $500 allocated to Wilhelm's estate by court order, the wrongful death claims are part of a valid state court judgment from a settlement proceed allocation hearing of which Caterpillar had actual notice. Instead of appearing at the hearing, intervening in the case, or appealing the state court order, Caterpillar "pursued a thinly disguised attempt to circumvent the state court order in federal court."

In its own Motion for Summary Judgment (#34), Caterpillar contends that Defendants' attempt to subvert the Plan's reimbursement requirement by wrongfully attempting to convert the Wilhelm estate's recovery to a wrongful death recovery is preempted by ERISA. Caterpillar argues that Defendants' "speciously contend in an effort to preclude examination of their subterfuge that the issue of their reimbursement obligation was decided in proceedings that were preempted by ERISA and by a court without personal jurisdiction over Caterpillar or subject

matter jurisdiction over its Section 502(a)(3) claim."

The court GRANTS Defendants' Motion for Summary Judgment (#29) and DENIES Caterpillar's Motion for Summary Judgment (#38). The court finds that Caterpillar had notice of the state court settlement allocation proceedings and could have intervened at the state level to press its rights, but instead sat on its rights in order to pursue a claim in federal court. Further, even if Caterpillar cannot be said to have notice, Caterpillar's claim still must fail because Defendants received a valid state court judgment properly allocating proceeds to the wrongful death claim and claims under the Illinois Wrongful Death Act are too remote to be "related to" Caterpillar's employee benefits plan so as to be preempted by ERISA.

Caterpillar's Actual Notice of the State Court Settlement Hearings

The evidence before the court shows that Caterpillar and its attorneys were well aware of the impending settlement proceeds allocation hearing taking place before the state court. Caterpillar has provided no evidence that there was anything untoward or underhanded in how the settlement funds were allocated. It is true that by allocating all but $500 to the wrongful death claim Caterpillar lost its right to reimbursement for the medical expenses. However, Caterpillar, although not officially noticed or made a part of the case, was indeed aware of the hearing on the Petition for Authorization on January 9, 2008, that allocated all $400,000 recovered from the Indiana Insurance Company to the wrongful death claim. Carol Sachtsale, Ingenix's attorney, was noted in the state court order as having been given notice by mail on December 11, 2007. Moreover, Kearns's January 4, 2008, letter informed Belofsky, Caterpillar's counsel, of Defendants' state court claims with regard to the insurance settlement. A "Notice of Hearing on the petition to settle" for the January 9, 2008 hearing was attached to

the letter. Further, the affidavit of Defendants' attorney Joe Phebus details a telephone conversation he had with Belofsky the day before the January 9, 2008, state court allocation hearing. During the conversation, Belofsky asked to postpone the January 9 hearing. From this evidence, the court concludes that Caterpillar had actual notice of the proceeds allocation hearing. Caterpillar never intervened or took any action after the hearings to appeal the state court order.

Caterpillar could have intervened in the state court settlement to protect its interests and ensured that any settlement agreement reached by the parties recognized its right to reimbursement, but it chose not to intervene or appeal and instead waited to file this claim in federal court.

<u>The Illinois Wrongful Death Act and ERISA Preemption</u>

However, even if Caterpillar could not be said to have received notice of the state court proceedings, its claim still fails because it cannot reach settlement funds properly allocated under the Illinois Wrongful Death Act to Wilhelm's beneficiaries. The leading cases from the federal appellate courts on this subject matter are two Fourth Circuit cases: <u>Liberty Corp. v. NCNB National Bank of South Carolina</u>, 984 F.2d 1383 (4th Cir. 1993) and <u>McInnis v. Provident Life & Accident Ins. Co.</u>, 21 F.3d 586 (4th Cir. 1994).

In <u>Liberty</u>, John W. Bristow's car was struck by a dump truck in Charlotte, North Carolina, which severely injured him and lead to his death 10 days later. <u>Liberty Corp.</u>, 984 F.2d at 1385. At the time of the accident, Bristow was insured by Liberty Life Insurance Company and was covered by a group health plan administered by the appellant Liberty Corporation, which paid $93,829.50 in medical bills on Bristow's behalf. The plan included a "subrogation

provision" obligating Bristow to repay Liberty for any medical expenses that he recovered from third parties. After Bristow died, Liberty and NCNB National Bank of South Carolina, as the personal representative of Bristow's estate, entered into an analogous "Third-Party Liability Reimbursement Agreement" under which Bristow's estate agreed to reimburse the benefits plan for any medical or dental expenses or loss of earnings benefits which are paid by the plan, or will be paid by it, which expenses and benefits arise out of the accident or illness that lead to Bristow's death, if payment is received from a third party or its insurer. Liberty Corp, 984 F.2d at 1385.

The county probate court approved a proposed settlement between NCNB and the driver of the dump truck that caused the accident and the dump truck's owner. The tortfeasors agreed to pay to NCNB $1,500,000, "to be distributed as hereinabove set forth pursuant to the North Carolina Wrongful Death and Intestate Succession Acts." Liberty Corp., 984 F.2d at 1385. NCNB subsequently offered to pay Liberty $1,160 as reimbursement of the expenses Liberty had paid on Bristow's behalf, as that sum represented the maximum amount that may be recovered for reasonable hospital expenses under the North Carolina Wrongful Death Act. Liberty Corp., 984 F.2d at 1385-86. Liberty then brought action against NCNB in the federal district court, seeking a declaration that ERISA preempted the North Carolina Wrongful Death Act to the extent it deprived Liberty of its subrogation rights under the plan and damages for NCNB's breach of the reimbursement agreement. It sought $72,561.17, the amount it had paid in Bristow's medical bills, minus the pro rata share of pursuing the wrongful death claim. The district court granted NCNB's motion for summary judgment, concluding that ERISA did not preempt the North Carolina Wrongful Death Act and that NCNB had offered to pay to Liberty

the maximum allowed by law. Liberty Corp., 984 F.2d at 1386.

The Fourth Circuit Court of Appeals affirmed the district court's decision. One of the arguments advanced by Liberty on appeal was that even if the $1,500 cap under the North Carolina Wrongful Death Act applied, ERISA preempted its application. The court noted that ERISA preempts any and all state laws insofar as they may now or hereafter relate to any employee benefit plan within its scope, and that a law "relates to" an employee benefit plan if it has a connection with or reference to such a plan. Liberty Corp., 984 F.2d at 1388. While recognizing that ERISA preemption is known for its breadth and was not limited to state laws specifically designed to affect employee benefit plans, the court realized that some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law "relates to" the plan. Liberty Corp., 984 F.2d at 1388.

The court concluded that the North Carolina Wrongful Death Act, if it affected the plan at all, did so in a manner that was too tenuous, remote, or peripheral a manner to warrant preemption. Liberty Corp., 984 F.2d at 1388. The plan only required Bristow to reimburse Liberty for medical benefits paid to him or on his behalf by a third party. Bristow subrogated to Liberty only his right to recover from third parties compensation for his medical expenses. The right to recover for wrongful death under the statute, however, was not a right that ever belonged to Bristow or to his estate. Rather, it belonged to his beneficiaries on whose behalf NCNB pursued the claim. Liberty Corp., 984 F.2d at 1388. The court concluded:

> "This right was never subrogated. Because Liberty never had a subrogated right under the Plan to any of the wrongful death settlement proceeds recovered on behalf of Bristow's beneficiaries, section 28A-18-2's cap on medical

expenses does not 'relate to' the Plan within the meaning of ERISA and is not preempted by the Act." Liberty Corp., 984 F.2d at 1388-89.

The Fourth Circuit revisited this territory in the McInnis opinion released just four months after Liberty Corp. In McInnis, Jeffrey McInnis was driving a car involved in an accident in which his wife, Lori, was killed. Jeffrey was the administrator of Lori's estate, and as such got a North Carolina state court to approve a insurance settlement of $200,000 as in the best interests of Lori's estate and her beneficiaries. Jeffrey then submitted a claim for $58,000 in medical bills to Lori's employer's welfare benefit plan. The employer insisted Jeffrey execute an "Acts of the Third Party" which would reimburse the plan for any funds advanced to pay for medical bills. Jeffrey refused because such an agreement would force the estate to pay out medical expenses beyond the $1,500 limit permitted by North Carolina's Wrongful Death Act. McInnis, 21 F.3d at 587-88. The district court found for the employer and concluded that the plan was covered by ERISA and any conflicting state provision was preempted by ERISA. McInnis, 21 F.3d at 588.

The Fourth Circuit began with an analysis of ERISA preemption and the court's decision in Liberty. The court noted that if the damages were recovered by or on behalf of the same person whose medical expenses it had paid, then the state law and ERISA conflict must be resolved in favor of ERISA preemption. McInnis, 21 F.3d at 589. The court wrote that "the answer to the question of whether a claim under North Carolina's wrongful death statute belongs to the deceased plan participant or to a beneficiary of the decedent defines the line between remoteness and relatedness under our Liberty decision. Our inquiry in this case, then, is directed to the question of whose damage claim is at issue." McInnis, 21 F.3d at 589.

The court found that the distinction between survival statutes and wrongful death statutes turned on the difference between those claims based on damages preceding death which were inflicted on and belonged to the decedent, and those claims based on damages caused by the decedent's death which belonged to family members.  McInnis, 21 F.3d at 589.  North Carolina combined its survival and wrongful death statutes.  North Carolina has a statute which preserves a decedent's tort claims to her estate and a separate provision which combines those survival claims with wrongful death claims of beneficiaries.  The Fourth Circuit found the facts of McInnis to be distinct from those of Liberty, in that in Liberty the damage claim belonged to the beneficiaries of the deceased plan participant and thus were too remote to be related to the plan and be preempted by ERISA, whereas in McInnis the damages recovered as to settlement clearly included those belonging to Lori McInnis and her estate, which was confirmed by the state court order approving the estate's $200,000 settlement.  McInnis, 21 F.3d at 590.  The court concluded that ERISA, under these facts, preempted the North Carolina wrongful death statute.

Under the applicable case law, the key issue before the court is whether or not, in this situation, the Illinois Wrongful Death Act "relates to" Caterpillar's employee benefit plan so as to be preempted by ERISA.  See Liberty Corp., 924 F.2d at 1388.  However, if the state action affects the employee benefit plan in a too remote, tenuous, or peripheral manner, the law will not "relate to" the plan and thus ERISA will not preempt it.  See Liberty Corp., 924 F.2d at 1388.

The question will turn on whose damage claim is at issue and whether the damage claim in question belonged to the beneficiaries of the deceased plan participant, and thus would be too remote to be related to the plan and preempted by ERISA, or whether the claim belonged instead to decedent Wilhelm and his estate, in which case ERISA would preempt the Illinois Wrongful

Death Act. See <u>McInnis</u>, 21 F.3d at 590.

    The Illinois Wrongful Death Act states:

        "Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the injured party to maintain an action and recover damages in respect thereof, then and in every such case the person who or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony. No action may be brought under this Act if the decedent had brought a cause of action with respect to the same underlying incident or occurrence which was settled or on which judgment was rendered." 740 Ill.Comp.Stat. 180/1 (West 2008).

        "Every such action shall be brought by and in the names of the personal representatives of such deceased person, and, except as otherwise hereinafter provided, the amount recovered in every such action shall be for the exclusive benefit of the surviving spouse and next of kin of such deceased person and in every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such a death, to the surviving spouse and next of kin of such a deceased person.

        \*\*\*

        "The amount recovered in any such action shall be distributed by the court

in which the cause is heard or, in the case of an agreed settlement, by the circuit court, to each of the surviving spouse and next of kin of such deceased person in the proportion, as determined by the court, that the percentage of dependency of each such person upon the deceased person bears to the sum of the percentages of dependency of all such persons upon the deceased person." 740 Ill.Comp.Stat. 180/2 (West 2008).

The purpose of the Illinois Wrongful Death Act is to compensate the parents and siblings of the deceased family member for pecuniary losses resulting from that family member's death. Hardnick v. United States, 2009 WL 1810106, at *12 (N.D. Ill. June 25, 2009); Elliott v. Willis, 442 N.E.2d 163, 168 (Ill. 1982). The established purpose of the Illinois Survival Act is to compensate the estate of the decedent for injuries and damages he or she suffered prior to death. National Bank of Bloomington v. Norfolk & Western Railway Co., 383 N.E.2d 919, 927 (Ill. 1978). It is important to distinguish between the two under Illinois law, as the survival act "allows for recovery of damages for injury sustained by the deceased up to the time of death; a wrongful death action covers the time after death and addresses the injury suffered by the next of kin due to the loss of the deceased rather than the injuries personally suffered by the deceased prior to death." Kaufman v. Cserny, 856 F.Supp. 1307, 1312 (S.D. Ill. 1994), citing Wyness v. Armstrong Wold Industries, 546 N.E.2d 568, 571 (Ill. 1989).

In the instant case, this court finds that, under the analysis laid down by the Fourth Circuit in Liberty and McInnis, claims satisfied under the Illinois Wrongful Death Act are too remote to "relate to" Caterpillar's employee benefits plan so as to be preempted by ERISA. Wrongful death claims compensate the parents or siblings of the deceased for pecuniary losses

resulting from that family member's death.  Though decedent was injured by a third party, only the funds allocated under the Survival Act, those which belonged to Wilhelm's estate, are reachable by Caterpillar.  Caterpillar has no right under the plan to reach funds allocated to Wilhelm's parents under the Illinois Wrongful Death Act.  The $499,500 of the total $500,000 settlement was clearly allocated by state court to Defendants under the Wrongful Death Act and thus belonged to the beneficiaries of the deceased plan participant and were too remote to be related to the plan and preempted by ERISA.  See <u>McInnis</u>, 21 F.3d at 590.

Defendants are now in possession of a valid state court judgment that has allocated $499,500 of the settlement funds to the wrongful death claim.  The court has concluded that claims under the Illinois Wrongful Death Act are too remote to be "related to" Caterpillar's employee benefits plan so as to be preempted by ERISA.  Defendant's Motion for Summary Judgment Pursuant to Rule 56 and for Judgment on the Pleadings Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (#29) is GRANTED in full.  Caterpillar's Motion for Summary Judgment (#38) is DENIED in full.

## MOTIONS TO STRIKE

Both Caterpillar and Defendants have filed motions to strike.  There is a general rule that motions to strike are disfavored.  <u>Heller Financial, Inc. v. Midwhey Powder Co., Inc.</u>, 883 F.2d 1286, 1294 (7th Cir. 1989).  Courts generally do not grant motions to strike unless the defect in the pleading causes some prejudice to the party bringing the motion.  <u>Hoffman v. Sumner</u>, 478 F.Supp.2d 1024, 1028 (N.D. Ill. 2007).  The court has reviewed both motions.  Having considered them, both motions to strike are DENIED.

IT IS THEREFORE ORDERED:

(1) Defendants' Motion to Strike Affidavit (#43) is DENIED.

(2) Caterpillar's Motion Strike Defendants' Reply to the Additional Material Facts Asserted in Caterpillar's Response to the Defendants' Motion for Summary Judgment (#47) is DENIED.

(3) Defendants' Motion for Summary Judgment (#29) is GRANTED in full.

(4) Caterpillar's Motion for Summary Judgment (#38) is DENIED in full.

(5) This case is terminated.

ENTERED this 29th day of September, 2009

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE